# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | |
|---|---|---|
| LARRY PAYNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.:  3:24-CV-395-KAC-JEM |
| | ) | |
| MARCUS PETERS, MARTY KAYLER, | ) | |
| WILLIAM WATSON, BRANDON | ) | |
| HOGAN, SGT. JERRY JOHNSON, PAUL | ) | |
| OAKES, and BRETT COBBLE, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Larry Payne, a prisoner in the custody of the Tennessee Department of Correction ("TDOC") housed at the Bledsoe County Correctional Complex ("BCCX"), filed a (1) pro se prisoner complaint under 42 U.S.C. § 1983 [Doc. 1] and (2) motion for leave to proceed *in forma pauperis* [Doc. 2].  For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion, permits individual-capacity claims against Defendants Marcus Peters and Marty Kayler to **PROCEED**, and **DISMISSES** the remaining claims and Defendants.

## I.     MOTION TO PROCEED *IN FORMA PAUPERIS*

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may apply for permission to file suit without prepaying the civil filing fee.  *See* 28 U.S.C. § 1915(a).  It appears from Plaintiff's motion for leave to proceed *in forma pauperis* that he does not have the means to pay the civil filing fee in one lump sum [*See* Doc. 2].  Accordingly, under 28 U.S.C. § 1915, the Court **GRANTS** Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 2].

Plaintiff is **ASSESSED** the civil filing fee of $350.00.  28 U.S.C. § 1914(a).  The Court **DIRECTS** the custodian of Plaintiff's inmate trust account to submit to the Clerk, U.S. District

Court, 800 Market Street, Suite 130, Knoxville, Tennessee 37902, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to his inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C.§ 1915(b)(1)(A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account **SHALL** submit twenty percent (20%) of his preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee has been paid. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this fee-collection procedure, the Court **DIRECTS** the Clerk to mail a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined. The Court also **DIRECTS** the Clerk to furnish a copy of this Memorandum and Order to the Court's financial deputy. This Memorandum and Order **shall** be placed in Plaintiff's prison file and follow him if he is transferred to another institution.

## II.    COMPLAINT SCREENING

### A.    Screening Standard

Under the PLRA, a district court must screen a prisoner complaint and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in [Federal] Rule [of Civil Procedure] 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). To withstand PLRA review, a complaint "must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Formulaic and conclusory recitations of the elements of a claim do not state a plausible claim. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a plausible claim. *Twombly*, 550 U.S. at 570. The Supreme Court has instructed that a district court should liberally construe pro se pleadings filed in a civil rights case and hold them to a less stringent standard than "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### B. Complaint Allegations

On May 8, 2024, Plaintiff was working his assigned kitchen job at BCCX [Doc. 1 at 5]. Correctional Officer ("CO") Marty Kayler, "the officer assigned to the kitchen," incorrectly believed Plaintiff "solicitated" [sic] a female Aramark employee by telling her, "I go up for parole in 5 months" [*Id.*]. CO Kayler called Sergeant Marcus Peters to the kitchen [*Id.*]. Sgt. Peters handcuffed Plaintiff, placed him out of sight of the security cameras, and asked Plaintiff if he told a female staff member when he was to be released from prison [*Id.*] When Plaintiff responded, Sgt. Peters placed his taser to Plaintiff's throat and threatened to kill Plaintiff and his family if he heard about Plaintiff speaking to the female employees again [*Id.*]. CO Kayler did not intervene, nor did Corporal Brandon Hogan or CO William Watson, who were also in the kitchen [*Id.* at 6].

Both Sgt. Peters and CO Kayler told Plaintiff that "they will make sure [he] will not make parole or see [his] parole date" [*Id.* at 5]. Sgt. Peters told CO Kayler to look up contact information for Plaintiff's family members, and CO Kayler taunted Plaintiff saying, "Look at this scared little bitch, he's a pussy, I have friends that love to shoot and kill boys like you for fun" [*Id.* at 5-6]. CO Kayler also told Plaintiff that he would "make [Plaintiff] pay" if he filed a grievance or report with Internal Affairs [*Id.* at 6].

3

Sgt. Peters then ordered CO Kayler to "write [Plaintiff] up for solicitation of staff" and instructed the female Aramark employee to write "a statement against" Plaintiff [*Id.* at 6]. Plaintiff was placed in a segregation unit pending his disciplinary hearing [*Id.*]. An inmate advisor spoke with Plaintiff and advised him that Disciplinary Board Chairperson Jerry Johnson would offer Plaintiff 10 days of punitive time if he pled guilty but would give Plaintiff 30 days if he proceeded to a hearing [*Id.* at 6]. Because Plaintiff believed he "was going to be found guilty regardless," he pleaded guilty, received 10 days of segregated confinement, and was scheduled to be released from segregation on May 18, 2024 [*Id.* at 6].

On May 9, 2024, Plaintiff wrote a letter to Warden Brett Cobble and filed a grievance about the May 8 incident [*Id.* at 6]. On May 22, 2024, he gave a recorded interview about the incident [*Id.* at 6].

On May 27, 2024, CO Kayler called Plaintiff to report to his kitchen job [*Id.* at 7]. While working in the kitchen, Plaintiff "started hallucinating, hearing voices, being very paranoid and in fear for [his] life while being around" Sgt. Peters, COs Kayler, CO Watson, and Corporal Hogan [*Id.*]. On May 28, 2024, Plaintiff notified his pod officer about his "mental health issues related to the May 8th incident[,]" and the pod officer and counselor contacted a mental health therapist [*Id.*]. Plaintiff spoke to the therapist and other mental health staff about the May 8 incident and his fear [*Id.*]. "They all felt that a job drop from the kitchen was necessary due to [Plaintiff's] mental health" [*Id.*]. Thereafter, the acting unit sergeant notified CO Kayler that Plaintiff "would not be reporting to work due to mental health issues" [*Id.*].

On June 2, 2024, CO Kayler claimed to have called Plaintiff's unit "multiple times for [Plaintiff] to report to work in the kitchen" [*Id.* at 7]. At approximately 4:15 p.m. that afternoon, CO Lannon came to Plaintiff's cell and told him he was to report to work [*Id.*]. As soon as CO Lannon left, CO Watson and CO Sykes came and escorted Plaintiff to segregation [*Id.*]. Plaintiff

4

learned that CO Kayler had issued a disciplinary charge against him for failing to report to work [*Id.*]. But Plaintiff asserts that the disciplinary charge, a "refusal to participate," was issued in retaliation for Plaintiff having spoken with TDOC investigators about the May 8 incident [*Id.*].

On June 2, 2024, Plaintiff wrote Warden Cobble a letter about the allegedly false disciplinary report CO Kayler filed [*Id.* at 8]. And on June 6, 2024, Plaintiff filed a grievance alleging that CO Kayler retaliated against Plaintiff by putting him in segregation for a false disciplinary offense [*Id.*].

Also on June 6, 2024, Plaintiff received a disciplinary hearing on the refusal-to-participate disciplinary charge over which Disciplinary Board Chairman Sgt. Johnson presided [*Id.*]. Unit Manager Paul Oakes was Plaintiff's assigned staff advisor, but he did not speak with Plaintiff "until the time of the hearing" [*Id.*]. CO Kayler gave testimony over the phone, and Plaintiff was not allowed to cross-examine him [*Id.*]. Sgt. Johnson refused Plaintiff's request to call CO Lannon as a witness [*Id.*].

On June 7, 2024, Plaintiff received his hearing summary and appeal form, but he did not receive a copy of the disciplinary report [*Id.* at 8]. He was found guilty and received 30 days in segregation, a job drop, a $5 fine, and the loss of 3 months of good-time credits [*Id.*]. Plaintiff appealed his disciplinary conviction, but the appeal was denied by Warden Cobble [*Id.*].

On July 3, 2024, Plaintiff wrote TDOC's general counsel to "[p]reserve all evidence pertaining to this complaint" [*Id.* at 8]. On July 5, 2024, Plaintiff appealed Warden Cobble's decision to TDOC Commissioner Frank Strada, who denied Plaintiff's appeal [*Id.* at 9].

On September 6, 2024, Plaintiff spoke to a mental health provider about the possibility of being transferred to Lois DeBerry Special Needs and was advised that he needed to send his transfer request to Warden Cobble [*Id.* at 9]. Plaintiff sent his transfer request to Warden Cobble on September 9, 2024 but received no response [*Id.*].

5

Thereafter, Plaintiff filed the instant suit seeking injunctive, declaratory, and monetary relief against Defendants Peters, Kayler, Watson, Hogan, Johnson, Oakes, and Cobble for alleged violations of his First, Eighth, and Fourteenth Amendment rights [*Id.* at 9-12].

## C.    Analysis

To state a claim against a defendant under 42 U.S.C. § 1983, Plaintiff must establish that a "person" acting "under color of" state law deprived him of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See* 42 U.S.C. § 1983. Plaintiff sued Defendants Johnson, Oakes, and Cobble in both their individual and official capacities [Doc. 1 at 3-4]. He has sued Defendants Peters, Kayler, Watson, and Hogan in their individual capacities only [*Id.* at 2-3]. The Court considers Plaintiff's official-capacity claims before turning to his individual-capacity claims.

### 1.    Official-Capacity Claims

Plaintiff's official-capacity claims against Defendants Johnson, Oakes, and Cobble cannot proceed. These Defendants are TDOC employees. Thus, suit against them in their official capacity is the equivalent of suit against TDOC itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). But because the TDOC is an arm of the State of Tennessee, a suit against TDOC is a suit against the State. *See Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (holding TDOC is equivalent of the "State"). And the law does not permit Plaintiff to maintain a Section 1983 action against a State because "a state is not a person within the meaning of § 1983." *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). Plaintiff's claims against Defendants Johnson, Oakes, and Cobble in their official capacity are also barred by the

6

Eleventh Amendment.[1]  *See, e.g., Berndt v. State of Tennessee,* 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to suits under Section 1983); *WCI, Inc. v. Ohio Dep't of Pub. Safety*, 18 F.4th 509, 513-14 (6th Cir. 2021) (holding state officials sued in official capacity immune from suit under doctrine of sovereign immunity absent consent).  Thus, the Court **DISMISSES** Plaintiff's official-capacity claims against Defendants Johnson, Oakes, and Cobble.

### 2.    Individual-Capacity Claims

To state a claim against a defendant in his individual capacity, a plaintiff must adequately plead that the particular defendant, through his or her own actions, has violated the Constitution. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002). Constitutional liability cannot attach to a defendant solely based on his or her position of authority. *See Iqbal*, 556 U.S. at 676 ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *Monell*, 436 U.S. at 691 (finding that liability under Section 1983 may not be imposed merely because a defendant "employs a tortfeasor").

### a.    Use of Force

The Eighth Amendment, incorporated against the states by the Fourteenth Amendment, provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.; *Robinson v. California*, 370 U.S. 660, 666–67 (1962).  The Eighth Amendment's "ban on cruel and unusual punishment prohibits the

---

[1] Although Plaintiff requests injunctive relief, his Complaint does not allege an ongoing violation of federal law.  Accordingly, the exception to Eleventh Amendment immunity set forth in *Ex Parte Young* is inapplicable in this case.  *See Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017) (holding that to determine if the *Ex Parte Young* exception is applicable, courts "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective" (cleaned up)).

'unnecessary and wanton infliction of pain' on prisoners." *Johnson v. Sootsman*, 79 F.4th 608,

615 (6th Cir. 2023) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

Here, Plaintiff challenges Sgt. Peters's threatened use of force. Generally, the threat of

force is not actionable under Section 1983. *See, e.g.*, *Mattingly v. Barnes*, No. 3:14-CV-591-J-

32JBT, 2018 WL 1496929, at *14 (M.D. Fla. Mar. 27, 2018), *aff'd sub nom. Mattingly v. Duval

Cnty. Jail*, 777 F. App'x 971 (11th Cir. 2019) (noting "Plaintiff's allegation that Defendant Khan

threatened to 'taze' him" failed to state a claim, as "verbal threats and harassment are generally

not actionable under § 1983"). But in certain circumstances, a verbal threat may be actionable.

*See Johnson*, 79 F.4th at 617. On this record, the Court cannot determine that Plaintiff fails to

state a claim for relief under the Eighth Amendment against Sgt. Peters, accordingly this claim

may **PROCEED**.

### b.    Failure to Intervene

An officer may be liable for failing to intervene when he or she "'observed' the force 'or

had reason to know' a colleague would use it" and "'had both the opportunity and the means' to

stop it." *Chaney-Snell v. Young*, 98 F.4th 699, 722 (6th Cir. 2024) (quoting *Turner v. Scott*, 119

F.3d 425, 429 (6th Cir. 1997)). Here, the Complaint alleges that Defendants Watson, Kayler, and

Hogan were present in the kitchen on May 8 [Doc. 1 at 6]. But the Complaint does not allege that

any of them actually observed Sgt. Peters's conduct or had reason to know that this force would

be used [*Id.*]. Nor does the complaint allege that any of these defendants had the opportunity and

means to stop the conduct [*See id.*]. *See Chaney-Snell*, 98 F.4th at 722. Accordingly, the Court

**DISMISSES** Plaintiff's claim against Defendants Watson, Kayler, and Hogan.

### c.    Retaliation

To state a First Amendment retaliation claim, Plaintiff must show that (1) he "engaged in

protected conduct; (2) an adverse action was taken against [him] that would deter a person of

8

ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two–that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiff presumably engaged in protected conduct when he filed a grievance concerning the May 8 incident. *See Hill*, 630 F.3d at 474 (holding prisoners have a protected right to file non-frivolous grievances). Placement in segregation is sufficiently adverse to deter a person of ordinary firmness from exercising his rights. *See, e.g., Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) (holding even the "threat of disciplinary sanctions is sufficiently adverse to support a claim of retaliation"). And Plaintiff's allegation that CO Kayler told Plaintiff that he would "make [him] pay" if he filed a grievance about the May 8 incident contains enough facts to plausibly infer that Defendant Kayler's conduct in filing an allegedly false disciplinary report was prompted by a retaliatory motive. Accordingly, this claim may **PROCEED** against CO Kayler.

### d. Due Process

Plaintiff maintains that the following events violated his Fourteenth Amendment due process rights: (1) Jerry Johnson's (a) failure to call a witness requested by Plaintiff, (b) refusal to provide Plaintiff a copy of the disciplinary report, (c) refusal to allow Plaintiff "adequate time to prepare a defense or consult with [a] staff advisor," (d) refusal to allow cross-examination of CO Kayler, and (e) failure to advise Plaintiff of the decision and his appeal rights; (2) Paul Oakes's failure to intervene "to prevent the violation of Plaintiff's due process rights" by Johnson during Plaintiff's disciplinary hearing; and (3) Brett Cobble's decision upholding the disciplinary decision [*Id.* at 10].

"Prison disciplinary proceedings are not a part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). But the loss of good-time credits as a result of a disciplinary conviction,

9

such as allegedly occurred here, will generally implicate a liberty interest and require certain due process protections. *See Id.* at 558. A prisoner must receive "notice of the charges, an opportunity to present evidence, and a written decision explaining the finding of guilt." *Tate v. Quintana*, No. 18-6179, 2019 WL 5866596, at *1 (6th Cir. May 22, 2019) (citing *Wolff*, 418 U.S. at 563-66).

Plaintiff's allegations in this case fail to state a plausible due process claim. Plaintiff's filings establish that he was provided at least four days' notice of the charges before the hearing, had the assistance of an inmate advisor, and was provided a hearing where CO Kayler presented evidence as to the charge against him [*See* Doc. 1 at 42-43]. Under the circumstances, that is sufficient to satisfy due process. *See, e.g., Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 445, (1985) (holding procedural due process requires only "some evidence" to support findings made in disciplinary hearing). Plaintiff has no due process right to cross-examine his accuser. *See Wolff*, 418 U.S. at 567-69. And because Plaintiff has not demonstrated a constitutional violation, Defendant Oakes cannot be liable for failing to intervene.

Additionally, while Plaintiff takes issue with Defendant Cobble's denial of his appeals, he has no due process right to appellate review of a disciplinary conviction. *Roundtree v. Dunlap*, No. 3:18CV1198, 2019 WL 3252912, at *6 (N.D. Ohio July 19, 2019) ("But a prisoner has no due process right to appeal a disciplinary conviction."); *Chance v. Compton*, 873 F. Supp. 82, 86 (W.D. Tenn. 1994) ("[A] right to appeal disciplinary convictions is not within the narrow set of due process rights enunciated by *Wolff*."). Nor does any alleged failure to follow TDOC policy give rise to a constitutional claim—TDOC policy and procedures do not create constitutionally-protected interests. *See McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest); *see also Stanley v. Vining*,

602 F. 3d 767, 769 (6th Cir. 2010) ("It has long been established that violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983."). Accordingly, the Court **DISMISSES** Plaintiff's due process claims.

### e. Supervisory Liability

Finally, in a claim titled "Deliberate Indifference and Due Process[,]" Plaintiff alleges that Warden Brett Cobble "failed to take disciplinary or other action to curb the known pattern of excessive force to inmates" and failed to protect inmates' "safety and due process rights" [*Id.* at 11]. "It is well-settled that government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of respondeat superior." *See Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (cleaned up). "In other words, a supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate" who allegedly violated the Constitution. *Id.* (citation omitted). Moreover, there are no facts in the Complaint alleging that Defendant Cobble "either encouraged the specific incident of misconduct or in some way directly participated in it." *See id.* at 242 (citation omitted) (a "supervisory official's failure to supervise" is "not actionable [under Section 1983] unless the supervisor either encouraged the specific incident of misconduct or in some way directly participated in it."); *see also Troutman v. Louisville Metro. Dep't of Corrs.*, 979 F.3d 472, 487-88 (6th Cir. 2020). Further, both Defendant Cobble's denial of Plaintiff's appeal and his alleged failure to respond to Plaintiff's grievances are insufficient to establish supervisory liability. *See, e.g., Shehee* v. *Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (finding that a failure to respond to or remedy a prisoner's grievance was insufficient to impose liability). As such, the Court **DISMISSES** Plaintiff's supervisory liability claim against Defendant Cobble.

11

## III.    CONCLUSION

As set forth above:

1.    The Court **GRANTED** Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 2];

2.    The Court **ASSESSED** Plaintiff the civil filing fee of $350.00;

3.    The Court **DIRECTED** the custodian of Plaintiff's inmate trust account to submit the filing fee to the Clerk in the manner set for above;

4.    The Court **DIRECTED** the Clerk to provide a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy;

5.    Plaintiff has set forth a plausible excessive force claim against Defendant Marcus Peters and a plausible retaliation claim against Defendant Marty Kayler, and these claims will **PROCEED**; and

6.    The Court **DISMISSED** all remaining claims and Defendants.

Accordingly:

1.    The Court **DIRECTS** the Clerk to send Plaintiff a service packets (a blank summons and USM 285 form) for Defendants Peters and Kayler;

2.    Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within twenty-one (21) days of entry of this Order;

3.    At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

4.    If Plaintiff fails to timely return the completed service packets, **this action will be dismissed**;

5.    The Remaining Defendants shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. **If any Defendant fails to timely respond to the complaint, it may result in entry of judgment by default against him;**

6.    Plaintiff is SHALL promptly inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to

provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED.**

**ENTER:**

<u>/s/ Katherine A. Crytzer</u>
KATHERINE A. CRYTZER
United States District Judge